DECISION AND JUDGMENT
{¶ 1} Appellant appeals his domestic violence conviction, entered following a bench trial to the Oregon Municipal Court. For the reasons that follow, we affirm.
 {¶ 2} Now divorced, on July 3, 2007, appellant, Herbert L. Snyder, Jr., and his wife, Deborah, were living separately. Their 13-year-old son, Ryan, was living with his mother in Oregon, Ohio. *Page 2 
 {¶ 3} Sometime prior to July 3, appellant and his wife purchased Ryan a paintball gun. Paintball guns shoot paint balls using a propellant cartridge containing compressed air or carbon dioxide.
 {¶ 4} On the day at issue, Ryan spoke to appellant on the telephone, explaining that he was out of paintballs. Ryan and appellant agree that appellant offered to buy some paintballs and bring them to Ryan's house. They also agree that appellant warned Ryan not to "dry fire" the gun as this would unnecessarily deplete the propellant. There is conflict in the testimony as to whether appellant told Ryan that he intended to make Ryan's mother pay for the paintballs.
 {¶ 5} Appellant arrived with a bag of paintballs which he gave to Ryan. Ryan loaded the gun and took some shots, aiming at a tree. According to Ryan, after a few shots, "* * * the gun sort of ran out of air and then the paintballs, they just fall [sic] right out of the barrel * * *." Ryan later testified that when this happened his father asked him, "* * * if I was firing the gun when he told me not to and I told him no. Then he started saying that I was a freak like my mother." Following this, according to Ryan, appellant grabbed Ryan's shirt collar, then started shaking him. "[T]hen he threw me. I thought he was trying to throw me to the ground." Ryan testified that appellant pushed him in the chest, causing him to lose his balance and stagger backward. Ryan testified that his father's actions caused redness on his neck that disappeared before police arrived. *Page 3 
 {¶ 6} Ryan and his mother called police who eventually charged appellant with domestic violence in violation of R.C. 2915.25(A). Appellant pled not guilty and the matter proceeded to a trial to the court.
 {¶ 7} At trial, Ryan and his mother testified to the events of July 3. In his defense, appellant testified, denying that he told Ryan that he intended to make Ryan's mother pay for the paintballs. Moreover, appellant testified that when he chastised Ryan for disobeying his instruction not to dry fire the gun, Ryan responded "Fuck you." Appellant characterized grabbing Ryan's collar as an anger management technique he had learned. "I went to anger management, this is what they teach you, not to slap or punch, take something away from him * * * that he likes, you know?" According to appellant, he grabbed Ryan's collar so that he could take away the paintballs. Appellant denied shaking or pushing his son.
 {¶ 8} Following trial, the court found appellant guilty as charged and sentenced him to 90 days jail time, with 60 days suspended. From this conviction, appellant now brings his appeal. Appellant sets forth the following two assignments of error:
 {¶ 9} "[I.] The determination of guilt to the offense of domestic violence by the trial court was in error as the same was not established beyond a reasonable doubt.
 {¶ 10} "[II.] The trial court erred to the prejudice of appellant in that the decision of the lower court determining that the appellant was guilty of the offense of domestic violence beyond a reasonable doubt took into account the exercise of appellant's right of *Page 4 
confrontation as a basis for such determination contrary to the constitutions of the United States and the State of Ohio."
 I. Manifest Weight / Sufficiency of Evidence {¶ 11} In his first assignment of error, appellant essentially argues that the trial court's finding of guilt was not supported by the weight of the evidence or that there was insufficient evidence to prove all of the elements of the offense.
 {¶ 12} A verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J., concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley
(1978), 56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203. *Page 5 
 {¶ 13} R.C. 2919.25(A) provides that, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family member" includes the child of the offender. R.C. 2919.25(F)(1)(ii). Whoever violates this provision is guilty of first degree misdemeanor domestic violence. R.C. 2919.25(D).
 {¶ 14} Appellant argues that there was no corroboration of Ryan's testimony. Ryan's mother testified only that she was inside the house and heard what sounded like an altercation between father and son. Appellant admits to grabbing Ryan's collar, but insists the act was only part of permissible parental discipline.
 {¶ 15} To be guilty of domestic violence under R.C. 2919.25(A), one need not cause serious injury. A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all. State v. Nielsen (1990), 66 Ohio App.3d 609,612. Appellant admitted that he grabbed Ryan's collar. If Ryan's testimony is credited, appellant also shook him and shoved him backward. This is sufficient to establish the elements of the domestic violence pursuant to the statute. Id.
 {¶ 16} With respect to the weight of the evidence, at trial "* * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. We have carefully reviewed the proceedings in this matter and fail to find any suggestion that the trier of fact lost its way or that manifest injustice occurred. Accordingly, appellant's first assignment of error is not well-taken. *Page 6 
 II. Confrontation Clause {¶ 17} In its written findings of fact following trial, the trial court stated:
 {¶ 18} "This Court makes a finding based upon the Defendant's own admission that he put his hands around his son's neck only for the sufficient time to retrieve the paint ball gun, that much he agrees with [what] this court feels rises to the level of domestic violence. Those facts coupled with the credibility of the alleged victim, Ryan Snyder, and his compelling testimony. Ryan was a polite, qui[et], young man who appeared well-dressed in court. He acted as if he did not want to testify against his father. In contrast, his father seemed to have no reservation about being involved in litigation with his son."
 {¶ 19} In his second assignment of error, appellant focuses on the last two sentences of the court's findings, suggesting that the reason that Ryan Snyder testified was because of appellant's constitutional right to be confronted by his accuser. Appellant insists that the court's reliance on Ryan's apparent reluctance to testify is in derogation of his right to confrontation, because he should not be penalized for insisting on his constitutional rights.
 {¶ 20} Our evaluation of the court's comments is not in conformity with the conclusion appellant puts forward. It is true that the Sixth Amendment, as well as Section 10, Article I of the Ohio Constitution, guarantee the right of an accused to confront or face his or her accusers. A fair reading of the court's comment, however, suggests that the court was merely noting its evaluation of Ryan's demeanor and *Page 7 
appearance in the exercise of determining his credibility. This is the type of evaluation of credibility that triers of fact have been engaged in from the beginning of our legal system. See, e.g., State v.Dawson, (Dec. 11, 2001), 10th Dist. No. 00AP-1052; Season's Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Moreover, reading the paragraph as a whole, it is clear that the comment of which appellant complains was nothing more than makeweight, as the court concludes in the first sentence that it finds the evidence to which appellant has admitted as sufficient to establish the offense. Since this is the case, even were we to accept appellant's evaluation of the comment, any error would be harmless. Accordingly, appellant's remaining assignment of error is not well-taken.
 {¶ 21} On consideration whereof, the judgment of the Oregon Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 8 
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR. *Page 1