**[Cite as *State v. Deanda*, 2021-Ohio-3774.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                         Court of Appeals No. F-20-010

      Appellee                                   Trial Court No. CP NO 20CR000002

v.

Aaron J. Deanda                                 **DECISION AND JUDGMENT**

      Appellant                                 Decided:   October 22, 2021

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellee.

Adam H. Houser, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant, Aaron Deanda, appeals the September 11, 2020 judgment of the

Fulton County Court of Common Pleas sentencing him to three years of community

control following his conviction for domestic violence.  For the following reasons, we affirm the trial court's judgment.

## A.  Facts and Procedural Background

{¶ 2} On January 14, 2020, appellant was indicted on one count of domestic violence in violation of R.C. 2919.25(A).  Because appellant had previously been convicted of domestic violence in violation of R.C. 2919.25, the current charge constituted a fourth-degree felony pursuant to R.C. 2919.25(D)(3).  Appellant was arraigned on January 24, 2020 and entered a not guilty plea.  The matter proceeded to a two day trial beginning on July 9, 2020.  The testimony elicited at trial and the relevant procedural history is summarized below:

### Testimony of J.D.

{¶ 3} J.D. is appellant's wife.  At all times relevant to this appeal, she and appellant resided together in Wauseon, Fulton County, Ohio.  On December 19, 2019, J.D. went to bed on the living room floor of their residence.  She declined to sleep in the bedroom with appellant because he had been exhibiting "odd" behavior.  Twice prior to the underlying incident, appellant woke up and began screaming for J.D.  She went to the bedroom to check on him and each time she found appellant claiming that he needed assistance because he felt something was preventing him from getting up.

{¶ 4} The third time appellant woke up he came down the hallway to the living room where J.D. was sleeping.  He then picked up a belt and began threatening to break their television because J.D. would not have sex with him.  As appellant got "more and

2.

more agitated," J.D. began recording a video of him with her phone. J.D. testified that while she was recording she focused on the screen rather than appellant. As the argument continued, appellant moved towards her. Through her phone, J.D. saw appellant's foot strike the phone which then fell and struck her in the head. She did not suffer any bruising or lacerations where the phone hit her but the area was "tender" for "just a short period of time."

{¶ 5} After the phone struck her, J.D. got "extremely upset." Appellant attempted to apologize. J.D. said "fuck that" just before the video ended. J.D. testified she did not intentionally end the recording but that the stop button was inadvertently pressed during the altercation. Appellant and J.D. then continued to argue with J.D. asking appellant to go back to bed. Eventually appellant went back to bed and fell asleep. Following this portion of J.D.'s testimony, the cell phone video of the incident was admitted into evidence and played for the jury.

{¶ 6} The day after the incident, J.D. showed the video to appellant. Appellant initially denied that the video was of him. He then denied that it had happened the previous evening as he believed he had slept through the night. J.D. informed appellant that it was indeed him and that he had been waking up in the night recently. Appellant said he did not recall waking up in the night at any time. Appellant then apologized to J.D. Despite his apology, J.D. testified that she remained "really angry."

{¶ 7} The following day, J.D. reported the incident to the Wauseon Police Department. She spoke with Officer Alan Donnett and showed him the video she had

3.

recorded. Officer Donnett then had J.D. prepare a written statement describing the incident. J.D. testified that she told Officer Donnett that she wanted to stop writing the statement part of the way through it but was instructed that it had to be completed. J.D. then completed the statement and the meeting concluded.

{¶ 8} When she went home, J.D. packed clothing and supplies for her and her children and went to stay with her mother. J.D. testified that she only reported the incident to the police so that appellant could get assistance with what she believed were mental health issues. She did not want appellant to be charged with a crime.

{¶ 9} J.D. then testified that she had reviewed the video again during a meeting with the prosecutor approximately one month prior to the trial. Following that review, J.D. concluded that appellant had not intentionally kicked her but that he had stumbled while attempting to reach a remote control behind her and his foot fell into the phone. She based this conclusion on the fact that during this later review she heard appellant say "sorry" after the incident which she did not hear on prior viewings. She now believes that appellant merely fell because he is generally clumsy. Despite reaching this conclusion approximately one month before trial, J.D. did not contact Officer Donnett or the Wauseon Police Department to revise her original written statement.

**Testimony of Officer Alan Donnett, Wauseon Police Department**

{¶ 10} Officer Alan Donnett had been employed with the Wauseon Police Department for two years prior to appellant's trial. During both his education to become

4.

a peace officer and his employment, he has completed training courses in investigating domestic violence incidents.

{¶ 11} Donnett was on duty on December 21, 2019, two days after the incident. On that date, J.D. and her mother came into the police department and requested to speak with an officer. Donnett responded to the request. During their discussion, J.D. prepared a written statement detailing how the incident occurred. Donnett described J.D.'s demeanor as "extremely hesitant" and "scared because she was making a police report." Donnett explained that it was common for those reporting domestic violence to be hesitant because "it's a big step" to report abuse to the police. Donnett recalled that J.D. stated that she did not want to take that step. He offered her encouragement stating that any continued violence would not stop unless she made the report. He denied, however, pressuring J.D. to complete the statement and testified that he is prohibited from forcing any victim of domestic violence to complete a report.

{¶ 12} After completing the written statement, J.D. provided Donnett with a copy of the cell phone video of the incident. Donnett provided J.D. with information related to victim's advocate services and discussed what arrangements she would need to make to move out of her residence and in with her mother. J.D. planned to move out of the residence that day while appellant was at work. Donnett instructed J.D. to contact the police if appellant arrived home during that process so that they could ensure no further incidents would occur.

5.

{¶ 13} Approximately three or four hours after their meeting, J.D. contacted the police department to inform them that appellant had come home while she was packing. Donnett traveled to the residence where he found appellant standing outside. Donnett briefly explained to appellant that J.D. had reported the prior incident and asked appellant for his version of events. Appellant stated that he and J.D. had a verbal argument but that it did not turn physical. Appellant did not state that he had lost his balance and fell onto J.D. during the incident. Donnett advised appellant that it would be best for him to leave while J.D. completed packing. Appellant agreed and left. Donnett left a short time later.

{¶ 14} On cross-examination, Donnett stated that he did not observe that J.D. had suffered any physical injuries as a result of the incident. He also specified that when J.D. appeared hesitant to complete the written statement he told her that his mother had been a victim of domestic violence and that he appreciated that she had taken the step of reporting her abuser. He did not ask J.D. if her hesitation in filling out the written statement was related to her fear of reporting it or because she could not recall the details of the incident. He did, however, believe that her body language indicated she was afraid of what appellant would do if he found out she had reported the incident.

## Crim.R. 29 Motion for Acquittal

{¶ 15} The state rested its case-in-chief after Donnett's testimony. In the trial court's chambers, appellant made an oral Crim.R. 29 motion for acquittal arguing that the state failed to present sufficient evidence on each element of the offense. The trial court

6.

denied the motion. Appellant then rested its case-in-chief without calling any witnesses and renewed his motion for acquittal. The trial court again denied appellant's motion.

## Jury Verdict and Sentencing

{¶ 16} On July 10, 2020, the state and appellant presented their closing arguments. The trial court then read the jury its instructions and the members of the jury proceeded to deliberations. The jury returned a guilty verdict the same day. The trial court ordered appellant to participate in a presentencing investigation and set a sentencing hearing for September 9, 2020. At sentencing, the trial court imposed a three-year term of community control for appellant's conviction. The trial court's judgment was memorialized in an entry dated September 11, 2020.

## Crim.R. 33 Motion for New Trial

{¶ 17} On July 15, 2020, appellant filed a Crim.R. 33 motion for new trial alleging the jury's verdict was based on insufficient evidence. The motion for new trial was still pending at the time of appellant's sentencing. The trial court denied appellant's motion on November 19, 2020.

## B. Assignments of Error

{¶ 18} Appellant timely appealed the trial court's September 11, 2020 judgment and asserts the following errors for our review:

> 1. The trial court abused its discretion when it denied appellant's motion for acquittal pursuant to Crim.R. 29 because the evidence presented was insufficient to support a conviction in this case.

7.

2. Appellant's conviction for domestic violence was against the manifest weight of the evidence.

3. The denial of appellant's motion for new trial and acquittal should have been granted because there was not sufficient evidence to convict defendant.

4. The trial court committed plain error when it allowed the prosecutor to use facts that were not in evidence during closing arguments and commit prosecutorial misconduct.

## II. Analysis

### A. The state introduced sufficient evidence to support appellant's domestic violence conviction.

{¶ 19} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal for domestic violence because the state failed to introduce sufficient evidence to support his conviction. In his third assignment of error, appellant argues that the trial court erred in denying his Crim.R. 33 motion for a new trial which argued that the verdict was not supported by sufficient evidence. The parties agree that our review of the sufficiency of the evidence is the same for each of these assignments of error. Therefore, we address these assignments together. [1]

---

[1] We note that prior to July 1, 2021, Crim.R. 33(A)(4) permitted an offender to file a motion for new trial alleging there was insufficient evidence to support the verdict. In 1981, the United States Supreme Court held that a finding that the evidence was insufficient to support a verdict in the context of a new trial motion barred retrial of the defendant. *Hudson v. Louisiana,* 450 U.S.40, 101 S.Ct.970, 67L.E.2d 30 (1981). Despite this ruling, the language permitting the request for a new trial based on insufficient

8.

{¶ 20} Domestic violence is a violation of R.C. 2919.25(A) which states "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant argues that the state failed to show that he acted knowingly or that his conduct resulted in injury to J.D. We disagree.

{¶ 21} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 22} At trial, J.D. testified that appellant awoke and came to the living room where she had been sleeping. He was upset because J.D. would not have sex with him and began arguing with her. He threatened to break the television and then moved

---

evidence remained in Crim.R. 33(A)(4). In *State v. Ramirez,* 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, ¶ 13, the Ohio Supreme Court found that this language in "[Crim.R. 33] has not been updated to reflect the current state of the law" in light of *Hudson.* As a result, this language was subsequently amended out of Crim.R. 33. It was, however, still in effect at the time appellant filed his motion for new trial. In light of *Ramirez,* this creates an issue of subject matter jurisdiction which neither party raised as to whether this motion was properly before the trial court since it could not grant the requested relief—a new trial. Because both the state and appellant concede that our review of the sufficiency of the evidence under Crim.R. 29 and the former language of Crim.R. 33(A)(4) is identical, we do not need to address that issue as it does not impact our resolution of appellant's sufficiency argument.

9.

toward her. Immediately thereafter, appellant raised his foot and struck J.D.'s phone. Importantly, the jury was shown the video that J.D. recorded of appellant's conduct. The video shows appellant threatening J.D. The video also shows appellant move toward J.D., raise his foot and thrust it toward her cell phone. J.D. testified that her phone struck her head which resulted in tenderness for a short time. Viewing these facts in a light most favorable to the prosecution, we find that the state introduced sufficient evidence to show that appellant acted knowingly and that J.D. suffered physical harm.

{¶ 23} Appellant makes two arguments alleging that the state failed to introduce sufficient evidence. First, appellant argues that because J.D. testified that she believed appellant striking her phone was an accident that the state failed to provide sufficient evidence that he acted knowingly. The video evidence belies such an argument. Appellant's singular focus on J.D.'s testimony ignores the remaining evidence which supports the required mental state element as described above.

{¶ 24} Second, appellant argues that the state did not introduce sufficient evidence at trial to satisfy the "physical harm" element of the offense. Pursuant to R.C. 2919.25(A), domestic violence occurs when an offender "knowingly cause[s] or attempt[s] to cause physical harm to a family or household member." Appellant argues that because J.D. allegedly did not suffer physical harm as a result of the incident that the state's presentation of evidence insufficient. This argument is without merit.

{¶ 25} Review of the record shows that the state elicited testimony from J.D. that her head was tender at the site where the phone struck her. While the harm incurred

10.

appears to have been minimal, that testimony is sufficient to show that J.D. did indeed suffer physical harm as a result of appellant's conduct. *See R.C. 2901.01(A)(3)* ("Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration.).

{¶ 26} Further, appellant's argument that the alleged lack of physical harm warrants reversal of his conviction disregards the language of the statute. As the state correctly notes, a domestic violence conviction under R.C. 2919.25(A) is supported by sufficient evidence if it shows that appellant knowingly caused or *attempted* to cause physical harm. R.C. 2919.25(A); *See Oregon v. Snyder,* 6th Dist. Lucas No. L-07-1424, 2008-Ohio-6537, ¶ 15, citing *State v. Nielsen,* 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990) ("To be guilty of domestic violence under R.C. 2919.25(A), * * * [a] defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injuries at all."). The evidence introduced at trial shows that appellant attempted to cause J.D. physical harm. As a result, the state introduced sufficient evidence as to this element of the offense.

{¶ 27} In sum, viewing the evidence in a light most favorable to the prosecution, we find that the video and related testimony was sufficient to show that appellant both caused and attempted to cause J.D. physical harm. For these reasons, appellant's argument that the state failed to introduce sufficient evidence to support his domestic violence conviction is without merit and his first and third assignments of error are found not well-taken.

11.

**B. Appellant's conviction was not against the manifest weight of the evidence.**

{¶ 28} In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence presented at trial. Specifically, appellant argues that the jury gave insufficient weight to J.D.'s testimony that she believed appellant's conduct was accidental—and, therefore, he did not act knowingly as required by the statute—which should have resulted in an acquittal.

{¶ 29} "When examining whether a conviction was contrary to the manifest weight of the evidence, the appellate court serves as a 'thirteenth juror' to conclude whether the trial court lost its way so significantly as to result in a manifest miscarriage of justice, necessitating that the conviction be overturned." *State v. Butler*, 6th Dist. Lucas No. L-08-1390, 2010-Ohio-178, ¶ 11. "In reaching this determination, we grant substantial deference to the trial court's decision given its unique opportunity to consider the evidence presented and to closely observe and assess the demeanor and credibility of the witnesses." *Id.* We note that questions regarding the "weight and credibility of evidence are primarily for the trier of fact." *State v. Teal*, 6th Dist. Lucas Nos. L-15-1280 and L-15-1281, 2017-Ohio-7202, ¶ 58, citing *State v. Pena,* 6th Dist. Lucas No. L-12-1309, 2014-Ohio-423, ¶ 22. This court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st. Dist.1983). Upon review of

12.

the record, we find that the jury's verdict is not against the manifest weight of the evidence presented at trial.

{¶ 30} Officer Donnett testified regarding J.D.'s reporting of the incident. When Donnett discussed the incident with J.D., she described appellant as having kicked her phone out of her hands. She did not recant this statement upon subsequent viewing until the time of her testimony. Further, she provided the video of the incident to Officer Donnett which was played for the jury at trial. The video shows appellant raise his foot and strike in J.D.'s direction amidst their verbal altercation. J.D. testified that the phone then struck her head which resulted in tenderness at the affected area—that is, physical harm. While J.D.'s testimony stated her belief that the incident was an accident because appellant was clumsy, our review of the video did not reveal appellant stumbling in the way J.D. describes.

{¶ 31} Having reviewed the record, including the video and related testimony, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by finding appellant guilty of domestic violence. We find the state presented substantial evidence supporting each element of the charge. Appellant's argument to the contrary is rooted in the jury's determination of J.D.'s credibility. Essentially, appellant believes the jury should have found J.D.'s testimony more credible than Officer Donnett's testimony or their own review of the video evidence, and found that appellant did not act knowingly when he kicked J.D.'s phone. The credibility of J.D.'s testimony is an issue for the jury to determine and we may only disturb the jury's assessment of her credibility "in the

13.

exceptional case in which the evidence weighs heavily against the conviction."
*Thompkins* at 386. In light of Officer Donnett's testimony and our review of the video evidence, we find that this is not an "exceptional case" which warrants reversal. The jury's verdict was not against the manifest weight of the evidence and appellant's second assignment of error is found not well-taken.

### C.  The trial court did not commit plain error in allowing the state to draw conclusions from the evidence in its closing argument.

{¶ 32} In his fourth assignment of error, appellant argues that the trial court erred in allowing the state to use facts which were not in evidence during its closing argument. Specifically, appellant argues that the state's inference that appellant lied about the nature of the incident to Officer Donnett was not established by the evidence and had a prejudicial effect on the jury. This, appellant argues, resulted in prosecutorial misconduct and warrants reversal of his conviction.

{¶ 33} Initially, we note that appellant did not object to the trial court's statement at trial. Therefore, the trial court did not have the opportunity to address this issue which appellant now raises for the first time on appeal. "Arguments raised for the first time on appeal are generally barred." *State v. Talley*, 6th Dist. Nos. L-20-1131, L-20-1132, 2021-Ohio-2558, ¶ 22, citing *Cawley JV v. Wall Street Recycling,* 35 N.E.3d 30, 2015-Ohio-1846 (8th Dist.). Otherwise, a party could "hold their arguments in reserve for appeal, thus evading the trial court process." *Id.*  Crim.R. 52(B), however, carves out an exception to this general rule which permits review of an argument for "plain error" even though the argument was "not brought to the attention of the court." As a result,

14.

appellant has waived all but plain error review of his fourth assignment of error. *State v. Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 89, citing *State v. Craig,* 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 100.

{¶ 34} "Plain error" is an error that affects an appellant's substantial rights. Crim.R. 52(B). "An error that affects substantial rights is one that affected the outcome of the proceedings." *State v. Rink,* 6th Dist. Lucas No. L-20-1049, 2021-Ohio-1068, ¶ 10, citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Plain error should be found only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Hill,* 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). A review of the pertinent record supports the conclusion that the trial court did not commit plain error in allowing the state to infer that appellant lied to Officer Donnett in its closing argument.

{¶ 35} In closing arguments, "[p]rosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn therefrom." *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 83, citing *State v. Richey,* 64 Ohio St.3d 353, 595 N.E.2d 915. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Ortiz,* 6th Dist. Wood No. WD-10-064, 2011-Ohio-4860, ¶ 21, citing *State v. Eley,* 77 Ohio St.3d 174, 187, 672 N.E.2d 640 (1996), 77 Ohio St.3d 174, 187, *overruled on other grounds*; *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

15.

{¶ 36} During its closing argument, the state characterized appellant's conversation with Officer Donnett, which occurred while J.D. was moving out of the residence, as follows:

> When the officer questions [appellant] about what had happened that night between [he and J.D.], there was an opportunity to say, I lost my balance and I fell. I didn't mean to kick her. You would expect that's what he would have said. That's what happened to her. But that's not what he said. He lied. He said, oh, we just—we had a verbal argument. There was no physical altercation. He lied because he knew he was acting knowingly. This was no accident. This was not him losing his balance. This was him causing or attempting to cause physical harm to J.D.

The evidence at trial, particularly the video, shows a physical confrontation between appellant and J.D. Appellant denied that there was any physical contact. The state's inference that appellant lied about the nature of the altercation is fairly drawn from that evidence and falls within the latitude granted to the parties during closing arguments. *See Cunningham* at ¶ 83. The state's inference that appellant lied based on the evidence in the record does not constitute error—let alone plain error—and appellant's fourth assignment of error is found not well-taken.

16.

### III. Conclusion

**{¶ 37}** We find each of appellant's assignments of error not well-taken. Therefore, we affirm the September 11, 2020 judgment of the Fulton County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                   _____
JUDGE

Thomas J. Osowik, J.

                                                                  _____
Gene A. Zmuda, P.J.                                    JUDGE
CONCUR.

                                                                     _____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.