[Cite as *State v. Messer*, 2017-Ohio-1223.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-16-1109

    Appellee                              Trial Court No. CR0201502616

v.

Ernest Keith Messer                       **DECISION AND JUDGMENT**

    Appellant                             Decided:  March 31, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

W. Alex Smith, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Ernest K. Messer, appeals the May 12, 2016 judgment

of the Lucas County Court of Common Pleas convicting him of grand theft by deception.

Finding no error, we affirm.

## I. Background

{¶ 2} On September 29, 2015, Messer was indicted on one count of grand theft, in violation of R.C. 2913.02(A)(3) and (B)(2). The following facts were elicited at the January 28, 2016 jury trial.

{¶ 3} In late 2014, Rebecca Moorman solicited bids for a bathroom remodeling project from three contractors, including Messer. In determining which to hire, Moorman testified that she considered each contractor's total price, proposed date of completion, and licensure status. Messer's bid was several thousand dollars less than the other bids and his proposed completion date for the project was several weeks earlier. He also assured Moorman that he was licensed, bonded, and insured, and that he would obtain the building permits required for the project. Moorman hired Messer for the remodeling project based on these representations.

{¶ 4} Messer and Moorman signed a contract for the project on November 8, 2014. The contract required Messer to move plumbing; replace the toilet and bathtub; retile the floor, walls, and shower; move a wall and a door; build a double sink vanity with cabinets; and paint the walls and ceiling. Moorman testified that Messer agreed to use her payments to purchase any fixtures and supplies that were needed for the project. The parties agreed to a total price of $27,500, with $8,250 due at the time of signing the contract, $8,250 due the day Messer started work, $8,250 due on January 27, 2015, and $2,750 due upon completion of the job. Messer told Moorman that he would start work on January 5, 2015, have the majority of the project finished before Moorman and her

2.

husband left for a vacation at the beginning of February, and complete the project by the end of February.

{¶ 5} Moorman paid Messer $8,250 on November 8, 2014, the day she signed the contract. On January 7, 2015, she paid Messer $9,250, representing the second installment payment plus $1,000 for Messer to use to purchase tile. Moorman made the third installment payment of $8,250 on January 26, 2015. In total, Moorman paid Messer $25,750.

{¶ 6} Messer began work on January 6, 2015. Although Messer performed some work in January, Moorman testified that the project was very incomplete when she and her husband left for their trip at the beginning of February and that Messer performed no work while they were gone. Messer nonetheless assured Moorman that the project was still on schedule to be finished by the end of February. He did not, however, perform as promised. He routinely failed to appear for work, and when he did appear (either personally or by sending employees) it was only for a few hours at a time. Messer also became increasingly difficult to reach because he stopped answering Moorman's phone calls and text messages. On the rare occasions that he was at the house, Moorman would ask when he planned to complete the project and when the supplies for the project would be delivered to the house. Messer assured her that he would get it done. Sometime in March, the parties agreed to a new completion deadline of April 1, 2015, which Messer did not meet.

3.

{¶ 7} Messer's pattern of dilatory behavior continued for the next several months. In May and June 2015, Messer gave Moorman numerous excuses for not working on her bathroom, including serious family issues, car troubles, spending time with his wife on their anniversary, returning rental equipment, "taking care of business," spending the day at the University of Toledo, building a casket for and mourning the death of his cat, and attending his daughter's graduation. He often failed to appear at the house on the days and times he told Moorman he would be there.

{¶ 8} At the end of July 2015, Moorman learned that Messer had not paid his granite supplier for the countertop he installed in the bathroom and that the supplier intended to place a lien on her property for the $1,795.50 balance. On July 30, 2015, Moorman and her husband sent Messer a letter demanding that he deliver all remaining supplies, including faucets, cabinets, hardware, shower fixtures, mirrors, a Jacuzzi bathtub and a toilet, and that he complete the remodel by August 14, 2015. Messer did neither.

{¶ 9} Moorman contacted the Washington Township Police Department around August 14, 2015. Detective Sergeant John Van Hersett came to her home to investigate. He found an unfinished bathroom, which he photographed. He did not find the faucets, fixtures, or bathtub.

{¶ 10} The photographs admitted at trial by both the state and the defense show that Messer did perform some work: he tore out the old floor and fixtures; tiled the floor, walls, and shower; moved the door; and installed the cabinet frame, granite countertop,

4.

sink, and bathtub frame during the seven-month period from the time Messer began the project to the day Moorman called the police. There was, however, still a substantial amount of additional work that remained unfinished in August 2015. Messer had not purchased or installed a toilet, purchased or installed a Jacuzzi tub, installed sink faucets, installed a showerhead or shower handle, finished the bathtub frame, covered the exposed pipes, or mounted the cabinet doors. Moorman testified that she paid another contractor $22,000 to complete the bathroom remodel.

{¶ 11} Moorman later learned that, contrary to Messer's pre-contract representations, he did not have any type of contractor's license or insurance, he was not registered as a contractor in Lucas County, and he did not apply for or receive any permits for the project. Christopher Kiel, Lucas County's chief building official, confirmed that Messer is not licensed as a contractor in Lucas County and that he did not apply for any permits relating to the project. Moorman testified she would not have hired Messer if she had known he was not licensed, bonded, and insured, though she did not ask him to see any licenses or insurance paperwork.

{¶ 12} Daniel Crigger Jr., one of Messer's laborers, testified that he worked at Moorman's house for 30 to 40 days in December 2014 and January 2015, but could not remember if he worked at the house in the spring. According to Crigger, Moorman's bathroom was 90 percent finished the last time he was in it and the state's photographs did not depict the way he recalled the bathroom. He claimed that when Messer and his

employees were asked to leave the house, everything was complete except for installing the lights, switches, bathtub, toilet, and possibly some cabinet doors.

{¶ 13} After the state presented its evidence, Messer moved for dismissal under Crim.R. 29, which the court denied. He failed to renew his motion after presenting his own evidence. Shortly after the jury received the case, it asked the court, "Why is this a criminal case vs. civ[i]l case?" After some discussion, the court and counsel agreed that the only appropriate response was to refer the jurors to the jury instructions. The jury then found Messer guilty of one count of grand theft by deception under R.C. 2913.02(A)(3) and (B)(2). The court sentenced him on May 10, 2016, to 14 months in prison.

{¶ 14} On appeal, Messer sets forth two assignments of error:

I. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR ACQUITTAL UNDER CRIMINAL RULE 29.

II. THE DEFENDANT WAS CONVICTED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 15} Messer first contends that the trial court erred by denying his motion for acquittal under Crim.R. 29. The state argues that Messer waived this argument on appeal

by not renewing his motion at the close of his case, and, if he did not waive the argument, it presented sufficient evidence to sustain Messer's conviction.

{¶ 16} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The Supreme Court of Ohio has held that the failure to object at trial to the insufficiency of the evidence does not waive a defendant's right to raise the challenge on appeal. *State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992). In *Jones* and *Carter*, the court reasoned that a defendant's not guilty plea preserves his right to object to any alleged insufficiency in the state's evidence. *Id.*

7.

**{¶ 17}** Despite this guidance, a number of Ohio appellate districts, including this district, have held that an objection to the sufficiency of the evidence is waived and may be reviewed only for plain error where the defendant fails to renew his Crim.R. 29 motion at the close of evidence. *See, e.g., State v. Bickley*, 6th Dist. Erie No. E-09-024, 2010-Ohio-1480, ¶ 30; *State v. Jeter*, 6th Dist. Erie No. E-02-047, 2004-Ohio-1332, ¶ 11; *State v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, 795 N.E.2d 690, ¶ 57 (6th Dist.); *State v. Wohlgamuth*, 6th Dist. Wood No. WD-01-012, 2001 Ohio App. LEXIS 5783, 4-5 (Dec. 21, 2001). *See also State v. Hicks*, 3d Dist. Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶ 39; *State v. Melton*, 141 Ohio App.3d 713, 719, 753 N.E.2d 241 (1st Dist.2001). But there are also a number of districts that have taken notice that this approach conflicts with *Jones* and *Carter* and have found no waiver. *See State v. Bryant*, 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶ 22-23; *State v. Blake*, 2012-Ohio-3124, 974 N.E.2d 730, ¶ 45-50 (12th Dist.); *State v. Straubhaar*, 5th Dist. Stark No. 2008 CA 00106, 2009-Ohio-4757, ¶ 40.

**{¶ 18}** As a practical matter, a conviction based on legally insufficient evidence amounts to a denial of due process and is plain error requiring reversal; thus, whether we review under a prejudicial-error standard or a plain-error standard is largely academic. (Citations omitted.) *Miller* at ¶ 57; *Thompkins*, 78 Ohio St.3d at 386-387, 678 N.E.2d 541 (recognizing that "a conviction based on legally insufficient evidence constitutes a denial of due process"). Nevertheless, consistent with the Ohio Supreme Court's decisions in *Jones* and *Carter*, and because we agree with the rationale of the courts that

8.

have more recently considered the issue, we conclude that a criminal defendant does not waive the right to challenge the sufficiency of the evidence or the denial of a Crim.R. 29(A) motion despite failing to renew the motion following the close of all evidence, and such challenges should be reviewed under a prejudicial-error standard.

{¶ 19} Having determined that Messer did not waive this argument, we now turn to the merits of Messer's first assignment of error.  R.C. 2913.02(A)(3) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception."  Messer argues that the state failed to present sufficient evidence of the "purpose to deprive" and "by deception" elements of the offense.

### 1.  "Purpose to Deprive"

{¶ 20} A person acts "purposely" when it is his specific intention to cause a certain result or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the person intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.  R.C. 2901.22(A).  The term "deprive" means to accept, use, or appropriate money, property, or services with purpose not to give proper consideration for the money, property, or services, and without reasonable justification for not giving proper consideration.  R.C. 2913.01(C)(3).

{¶ 21} In cases where the defendant's alleged violation of R.C. 2913.02(A)(3) arises within a contractual dispute, the state must demonstrate that at the time the defendant accepted payment, he had no intent to perform under the contract or repay the

9.

money.  *State v. Kerr*, 6th Dist. Ottawa No. OT-13-036, 2015-Ohio-2228, ¶ 19.  Of course, it is impossible for the state, the jury, or anyone else to crawl inside the defendant's mind to determine what that person actually intended to do at any particular time.  It is therefore necessary to rely upon circumstantial evidence to establish purpose or intent.  "Circumstantial evidence and direct evidence inherently possess the same probative value * * *," *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus, and "[a] conviction can be sustained based on circumstantial evidence alone."  *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-55, 529 N.E.2d 1236 (1988).  Circumstantial evidence is sufficient to uphold a conviction so long as the inferences to be drawn from the surrounding facts in evidence are not so weak or attenuated that no reasonable mind could find guilt beyond a reasonable doubt.  *State v. Willis*, 6th Dist. Wood No. WD-88-38, 1989 Ohio App. LEXIS 3103, 10-11 (Aug. 11, 1989).

{¶ 22} Messer argues that the record lacks sufficient evidence of the "purpose to deprive" element because he completed some work under the contract.  According to Messer, although evidence regarding the *extent* of the work completed might be relevant to a civil breach-of-contract case, such evidence is legally insufficient to establish criminal intent.  The state argues that Messer's minimal performance under the contract provided sufficient evidence from which the jury could have found that Messer acted with criminal intent.

10.

**{¶ 23}** In *Kerr*, this court held that circumstantial evidence relating to the extent of the defendant's actual performance under the contract can sufficiently establish the defendant's intent to perform (or not to perform) at the time that payment was accepted for the project. *Kerr* at ¶ 20-22. More specifically, the defendant's performance of a significant amount of work under the contract demonstrates that the defendant had an intent to perform the contract at the time of payment, while a defendant's performance of only a minimal amount of work under the contract cannot negate a finding of intent not to perform. *Id.* at ¶ 19, 22. In addition, other forms of circumstantial evidence may also be used to establish intent under R.C. 2913.02(A)(3). For example, becoming difficult to reach after accepting money, missing scheduled appointments, and misrepresenting facts can constitute circumstantial evidence of intent. *State v. Wright*, 6th Dist. Erie No. E-03-054, 2004-Ohio-5228, ¶ 43.

**{¶ 24}** Here, considering the evidence in a light most favorable to the prosecution, we find there was sufficient evidence regarding the "purpose to deprive" element of the offense. There was evidence that Messer accepted $25,750 from Moorman and then failed to purchase or deliver many of the needed materials, supplies, and fixtures, failed to pay a supplier for the granite countertop, and left the project in a state that required Moorman to pay another contractor $22,000 to complete the job. There was also evidence that he avoided contact with Moorman, regularly missed work without any explanation, made repeated promises of performance that he failed to honor, and provided a string of excuses for his failure to make any significant progress on a project

11.

that was supposed to be completed within six to eight weeks but lasted more than seven months. These facts, if believed by the jury, could convince a rational trier of fact that Messer had no intent to perform the contract at the time he accepted $25,750 from Moorman.

## 2. "By Deception"

{¶ 25} Under R.C. 2913.01(A), "deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact. A person acts "knowingly," regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person has knowledge of circumstances when he is aware that such circumstances probably exist. *Id.*

{¶ 26} The state presented evidence that Messer falsely told Moorman that he had the licensure necessary to obtain building permits for the bathroom remodel. In fact, Messer was not licensed in Lucas County and never attempted to obtain permits for Moorman's remodeling project. Moorman testified that she would not have hired Messer if she had known he was unlicensed.

{¶ 27} Messer argues this evidence is insufficient to establish the "by deception" element of the theft charge because Moorman would have asked to see written proof of

12.

Messer's licensure before accepting his bid if licensing was really important to her. But the focus is on Messer's—not Moorman's—state of mind. Given that Moorman specifically asked Messer whether he was licensed, bonded, and insured before accepting his bid, it is reasonable to infer that Messer knew that Moorman wanted to hire a licensed, bonded, and insured contractor. Messer also argues that "deception" is lacking because he was not legally required to be licensed and bonded for the project. But that is irrelevant; the evidence demonstrates that Moorman required a licensed and bonded contractor for the project. The evidence presented at trial, if believed, could convince a rational trier of fact that Messer misrepresented himself as a licensed and bonded contractor to induce Moorman to hire him for the project. Thus, the state presented sufficient evidence to satisfy the "by deception" element of the theft charge.

{¶ 28} In sum, after consideration of the record, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt all the elements of theft by deception under R.C. 2913.02(A)(3). We therefore find Messer's first assignment of error not well-taken.

### B. Manifest Weight of the Evidence

{¶ 29} Messer's second assignment of error asserts that his conviction was against the manifest weight of the evidence.

{¶ 30} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way

13.

in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172*,* 175, 485 N.E.2d 717 (1st Dist.1983). Although under a manifest weight standard we consider the credibility of witnesses, we extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 31} The critical issue in this case was whether Messer acted with criminal intent—i.e., whether he intended to perform under the contract when he accepted $25,750 from Moorman. The performance of a significant amount of work under the contract would demonstrate an intent to perform, while minimal performance under the contract cannot negate a finding of the requisite intent to support a conviction under R.C. 2913.02(A)(3). *Kerr*, 6th Dist. Ottawa No. OT-13-036, 2014-Ohio-2228, ¶ 20, 22.

14.

**{¶ 32}** Although one of Messer's laborers testified that the bathroom was 90 percent finished the last time he saw it in 2015, this testimony is not credible in light of the other evidence. The fact that Moorman paid Messer $25,750 and then paid another contractor $22,000 to complete the project demonstrates that Messer did not perform a significant amount of work as he claims. *Cf. State v. Coleman*, 2d Dist. Champaign No. 2002 CA 17, 2003-Ohio-5724, ¶ 33 (finding contractor's conviction of grand theft was against the manifest weight of the evidence because "[t]he fact that a subsequent roofer charged only $1500 to complete the roofing project that the insurance company's adjuster estimated would cost $11,215.47, indicates that a significant amount of the roofing project was completed by Coleman."). Moreover, Messer promised to complete the project within six to eight weeks and the photographs demonstrate that after over seven months the bathroom was not just incomplete, but was completely unusable. The toilet and bathtub had not been installed. The shower and sink basins did not have faucets or handles to make them operable. There were exposed pipes in the wall and the shower stall. The cabinets were missing their doors. And, on top of all of this, the jury heard evidence that Messer avoided contact with Moorman as he continued to miss appointments and deadlines. He refused to answer Moorman's phone calls and only sporadically answered her text messages. When he did respond to the text messages, he either lied about when he would come to work or made excuses for failing to come to work.

15.

**{¶ 33}** Here, the jury heard the witnesses' testimony and had before it evidence from which they could reasonably conclude that Messer did not intend to perform under the contract when he accepted payment from Moorman. We cannot say that the jury lost its way in resolving the evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction should be reversed. Accordingly, we find Messer's second assignment of error not well-taken.

### III. Conclusion

**{¶ 34}** The May 12, 2016 judgment of the Lucas County Court of Common Pleas is affirmed. Messer is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____
                                          JUDGE
Christine E. Mayle, J. _____
CONCUR.
                                          JUDGE

James D. Jensen, P.J. _____
CONCURS AND WRITES
SEPARATELY.
                                          JUDGE

16.

**JENSEN, J., concurring as to result.**

{¶ 35} I agree with the majority's affirmance of appellant's conviction in this case. Moreover, I concur in the majority's conclusion that "a criminal defendant does not waive the right to challenge the sufficiency of the evidence or the denial of a Crim.R. 29(A) motion despite failing to renew the motion following the close of all evidence." I write separately because I find that the majority's reliance on the Supreme Court of Ohio's decisions in *State v. Jones*, 91 Ohio St.3d 335, 744 N.E.2d 1163 (2001), and *State v. Carter*, 64 Ohio St.3d 218, 594 N.E.2d 595 (1992), is misplaced.

{¶ 36} In *Jones* and *Carter*, the Supreme Court summarily rejected the state's position that a criminal defendant waives the right to challenge sufficiency of the evidence on appeal where the argument is not first raised before the trial court. In rejecting that argument, the court found that a plea of not guilty preserves a defendant's right to object to an alleged insufficiency of the evidence on appeal. *Jones* at 346, citing *Carter* at 223.

{¶ 37} Having reviewed these decisions carefully, it is clear that waiver within the context of a trial court's denial of a Crim.R. 29 motion was not within the Supreme Court's purview. Rather, the Supreme Court was examining the state's argument that sufficiency arguments, in general, are waived if not raised in the trial court. Nonetheless, I find that the rationale inherent in the Supreme Court's decisions in *Jones* and *Carter* is properly extended to circumstances in which a criminal defendant fails to renew a Crim.R. 29 motion at the close of the evidence. I reach this conclusion because I find

17.

that the state's obligation to introduce sufficient evidence is not dependent upon whether a criminal defendant challenges the sufficiency of the evidence at trial. In its decision in *Carter*, the Supreme Court of Ohio noted: "The prosecution must prove each and every element of the offense beyond a reasonable doubt." *Id.* at 223. This obligation, rooted in notions of due process, is absolute, and cannot be excused simply because a defendant does not challenge the sufficiency of the evidence at trial by renewing a Crim.R. 29 motion. With this clarification in mind, I concur with the majority's decision.

18.