[Cite as *State v. Howard*, 2025-Ohio-5486.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of
Toledo

     Appellee

v.

Robert James Howard

     Appellant

Court of Appeals No. L-25-00040

Trial Court No. CRB-24-07035

**DECISION AND JUDGMENT**

Decided: December 9, 2025

* * * * *

Rebecca Facey, Esq., Chief Prosecutor and
Jimmie L. Jones, Esq., Assistant Prosecuting Attorney, for appellee.

Samuel E. Gold, Esq., for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Robert James Howard, appeals from a judgment entered by the
Toledo Municipal Court convicting him, following a bench trial, of domestic violence
and assault. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and of the Facts**

{¶ 2}  On July 15, 2024, the victim called the police, alleging a domestic incident between herself and Howard at her Toledo, Ohio apartment. The victim stated that she was injured after Howard pushed and shoved her.

{¶ 3}  On August 5, 2024, the Lucas County grand jury indicted Howard on two counts related to the July 15 incident: Count one, domestic violence, in violation of R.C. 2919.25(A), (D)(1), and (D)(2), a misdemeanor of the first degree; and count two, assault, in violation of R.C. 2903.13(A) and (C)(1), a misdemeanor of the first degree.

{¶ 4}  On August 6, Howard appeared in court and entered a plea of not guilty. No time waiver was signed.

{¶ 5}  On August 8, the trial court conducted a bench trial in the matter. Testimony was taken from three of the responding officers, the victim, and Howard.

{¶ 6}  The victim testified first. She stated that she met Howard through a dating app and that she moved into his residence the previous September. She stated that while living in Howard's residence, she and Howard were "intimate." At some point, the victim moved out of Howard's residence and into an apartment at 3140 Matson Street. She testified that although the two were no longer in a relationship, Howard began staying with her at the Matson Street residence on June 9, 2024. That stay ended on July 15, 2024 when, according to the victim, she told Howard that he needed to leave. She stated that as she and Howard were gathering Howard's things, she tried to talk to him about the situation and "touched him" on the arm. Howard, she testified, was yelling and pushing

2.

and shoving her into doors and walls, and so, finally, she exited the apartment to call 911. She testified that after being pushed and shoved, she had "redness" on her body. During the 911 call, the victim referred to Howard as her "ex-boyfriend," based on the time they lived together the previous year, at his residence. After making the call, the victim reentered the home. She stated that Howard was still in her apartment when she went outside to speak with police officers, but when the police entered her apartment, Howard was nowhere to be found. The victim testified that she saw Howard twice more that day, the first time not even an hour after the initial event, and the second time later that night. The victim stated that both times she contacted police. On redirect examination, the victim acknowledged that Howard should not have been in her home at all during the period in question because there was a no contact order in place that protected her against him.

{¶ 7} Toledo Police Officer Dallas Kwapich responded to the scene at around 7:00 p.m. He found the victim "highly distraught," "crying," and "shaking," with "pronounced redness on the back of her neck, shoulders, and left hip area." She told Officer Kwapich that she had just been in a verbal and physical altercation with Howard, her "ex-boyfriend," and that this altercation resulted in the redness to her body. She also told him that Howard was still in her apartment. Officer Kwapich went into the apartment to investigate and discovered that Howard had fled the scene.

{¶ 8} Detective Nicholas Linthicum responded to the scene shortly after Officer Kwapich. He heard from the victim about the facts of the incident, and he, too, noticed

3.

redness on areas of her body. The victim told Detective Linthicum of a rocky history between herself and Howard, and that they recently had started living together again. She told him that she had asked Howard to leave, which started an argument that led to a physical altercation during which Howard pushed her and threw her around the room. Detective Linthicum testified that based on his training and experience as an officer, the injuries he observed were consistent with the story that was told to him by the victim.

{¶ 9} Officer Georges Habbouche responded to 3140 Matson at 9:45 p.m. about an "unwanted person." He explained that an unwanted person is someone who "continues showing up or won't leave." When he arrived on the scene, he observed the vehicle that Howard was alleged to be inside. Officer Habbouche initiated a stop and discovered Howard sitting in the rear passenger seat. Howard identified himself and stated that he had been at the Matson Street address "with his girl." Howard told the officer that he knew he was not supposed to be there. Ultimately, Officer Habbouche arrested Howard on an outstanding felony domestic violence warrant.

{¶ 10} At the conclusion of the prosecution's case-in-chief, trial counsel made a motion for acquittal, which the court denied. Howard then took the stand.

{¶ 11} Howard testified that on the date in question, he called the victim to notify her that he would be leaving, and her response was to "[throw] a tantrum, saying [he] wasn't allowed to move without her say so first." He stated that he then went over to her apartment and started playing a video game. According to Howard, the victim "came in the room multiple times attempting to pick a fight with [him]." Eventually, he began

4.

packing up his belongings. He stated that when he attempted to leave, she placed both hands on his chest and tried to stop him from walking past her. He stated that she was grabbing him by the arm and shoving him around the house, trying to prevent him from gathering his things. Howard denied shoving the victim back, pushing her into a wall, or shoving her onto the ground. He stated that once after she tried to grab him, he pulled his arm back from her and "she fell down…in the hallway" and then went outside. Howard testified that he left immediately after. Howard acknowledged going back to the apartment complex parking lot to get his vehicle towed. He stated that the police came and blocked him in between the tow truck and the police car. Howard denied ever having been in a relationship with the victim. He agreed that a no contact order had previously been issued against him, but stated that he thought, at least initially, that he was allowed to be in the victim's apartment. He stated that he was living at the 3140 address with the victim, that he had a "decent" amount of furniture and belongings in the residence, and that he was intimate with her for the majority of June 2024, but not "seriously intimate." On cross examination, when asked about how the victim sustained her injuries, Howard stated, "I mean, she did fall over the end table, that was in the hallway, when she tried to pull me out of the room. But I don't know how that would have resulted in the injuries that they had claimed." He stated that the victim's "falling down was the last contact between [himself and the victim] before [he] left." According to Howard, the victim "suddenly changed her mind," and that even as he was "already moving out, she started screaming you can just get out then."

{¶ 12} Following Howard's testimony, the defense concluded its case and renewed its Crim.R. 29 motion. The motion was again denied.

{¶ 13} The court made a finding of guilty as to both counts contained in the complaint, and the matter proceeded directly to sentencing. The trial court took into consideration the statements of Howard and counsel for both parties and then imposed a total of 6 months in CCNO, with the six months ordered suspended. This appeal followed.

## Assignments of Error

{¶ 14} On appeal, Howard asserts the following assignments of error:

I.  The trial court erred when denying Appellant's criminal rule 29 motion for acquittal.

II.  The verdict of the trial court was against the manifest weight of the evidence presented.

## Law and Analysis

**First Assignment of Error**

{¶ 15} Howard argues in his first assignment of error that the trial court erred in denying Howard's motion for acquittal pursuant to Crim.R. 29, and that his convictions were not supported by the sufficiency of the evidence.

{¶ 16} Crim R. 29(A) provides:

> The court on a motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense

6.

> or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 17} This court has held that "[a] motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence." *See State v. Messer*, 2017-Ohio-1223, ¶ 16 (6th Dist.), citing *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. A trial court's denial of a motion for acquittal under Crim.R. 29(A) "'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *Messer* at ¶ 16, quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution and determines whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court does not weigh the evidence or assess the credibility of the witnesses. *Id.*, citing *State v. Were*, 2008-Ohio-2762, ¶ 132. The question of whether the evidence is sufficient to support a conviction is a question of law. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 18} Howard asserts that there was not sufficient evidence to convict him of domestic violence or assault.

{¶ 19} R.C. 2919.25(A), domestic violence, requires the State to prove that a defendant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Relevant to this case, R.C. 2919.25(F)(1)(a)(i) provides that "family

7.

or household member" means any of the following who is residing or has resided with the offender, including "[a] spouse, a person living as a spouse, or a former spouse of the offender." Howard argues that the victim's testimony "was not conclusive to establish the existence of the sort of relationship identified in 2919.25(F)(1)(a)(i)."

{¶ 20} In response to Howard's argument, the State points to R.C. 2919.25(F)(2), which provides that a "person living as a spouse" includes "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

{¶ 21} The victim in this case clearly indicated that in the year prior to the July 15, 2024 incident, she and Howard had lived together (at his residence) as boyfriend and girlfriend. This is sufficient to support a finding that the victim cohabited with Howard within five years of the time the offenses were committed -- even if they were not cohabiting at the time of the offenses. *See State v. Riedel*, 2017-Ohio-8865 (8th Dist.) (evidence supported a finding that the victim cohabited with the defendant, where the victim testified she had lived with the defendant as boyfriend and girlfriend for several months within three years of the alleged incident of domestic violence); *State v. Fanelli*, 2022-Ohio-3498 (6th Dist.) (where the victim testified that the parties were in a romantic relationship and lived together at her residence "on and off, for eight months" during the two years prior to the incident in question, the evidence was sufficient to establish that the victim was "a person living as a spouse" with the defendant within five years of the

8.

incident). Moreover, Howard -- arguably contradicting his earlier testimony that he and the victim had "never been in a relationship" -- acknowledged on cross examination that he and the victim had been "living together for the majority of June 2024, and were being intimate during that time."

{¶ 22} Next, Howard claims the evidence was insufficient to show that an assault took place. Specifically, he claims that there was insufficient evidence of harm. To establish the offense of assault under R.C. 2903.13(A), the State must prove that a defendant "knowingly cause[d] or attempt[ed] to cause physical harm to another person." Here, the victim testified that during their altercation, Howard pushed her into doors and walls. Additionally, Officer Kwapich observed "[p]ronounced redness on the back of her neck, shoulders and left hip area." Detective Linthicum likewise observed redness on the victim's body. Even though Howard claims he was only trying to leave and that the victim would not let him, we find, after viewing the evidence in a light most favorable to the State, that any rational trier of fact could have found that Howard knowingly caused or attempted to cause physical harm to the victim. *See State v. Quiles,* 2005-Ohio-388, ¶ 30-31 (evidence of harm was sufficient to sustain misdemeanor assault charge where the evidence showed that the victim was slapped in the face by the defendant and where officers observed red marks on the victim's face).

{¶ 23} Similarly, "[t]o be guilty of domestic violence under R.C. 2919.25(A), one need not cause serious injury. A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all." *City of*

9.

*Oregon v. Snyder,* 2008-Ohio-6537, ¶ 15 (6th Dist.), citing *State v. Nielsen,* 66 Ohio App.3d 609, 612, (6th Dist. 1990). In *Snyder*, this court found sufficient evidence of harm where the defendant grabbed, shook, and shoved the victim, causing redness to the victim's neck that "disappeared before police arrived." *Id.* at ¶ 5. We find that the same evidence of harm that establishes assault in this case is also sufficient to establish the offense of domestic violence. Howard's first assignment of error is therefore found not well-taken.

**Second Assignment of Error**

{¶ 24} Howard argues in his second assignment of error that the trial court's verdict was against the manifest weight of the evidence. Again, the trial court found Howard guilty of domestic violence and assault.

{¶ 25} When reviewing a manifest weight argument, an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12; *Thompkins* 78 Ohio St.3d at 387. Essentially, "[a] manifest weight of the evidence challenge contests the believability of the evidence presented." *State v. Wynder,* 2003-Ohio-5978, ¶ 23 (11th Dist.). When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the record, weigh the evidence and all reasonable inferences drawn from that evidence, consider the credibility of the witnesses and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest

10.

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 2010-Ohio-6048, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

{¶ 26} It is well established that the weight to be given to the evidence and to the credibility of witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982). In reviewing a manifest weight of the evidence challenge, an appellate court acts as a "thirteenth juror." *State v. Moore*, 2019-Ohio-3705, ¶ 99-100 (6th Dist.). "Fundamental to the analysis is that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *State v. Gist*, 2014-Ohio-3274, ¶ 26 (6th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 27} Howard argues that the trial court gave too much deference to the testimony of the victim regarding the circumstances of the altercation and her resulting injury. However, "'[a] conviction is not against the manifest weight of the evidence simply because the [finder of fact] rejected the defendant's version of the facts and believed the testimony presented by the [prosecution].'" *Garfield Hts. v. Martin*, 2021-Ohio-2310, ¶ 26 (8th Dist.), quoting *State v. Jallah*, 2015-Ohio-1950, ¶ 71 (8th Dist.), quoting *State v. Hall*, 2014-Ohio-2959, ¶ 28 (4th Dist.). Here, the trial court listened to the testimony of the victim and chose to believe that Howard was the cause of the victim's injury. Additionally, the police verified the injury to the victim. The trial court, as the finder of

11.

fact, did not lose its way in resolving any conflicting testimony as between Howard and the victim. Accordingly, Howard's second assignment of error is found not well-taken.

### Conclusion

{¶ 28} The judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Gene A. Zmuda, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.