[Cite as *State v. Cortez*, 2025-Ohio-5736.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-25-001

      Appellee

                                  Trial Court No. 2023CR0565

v.

David Cortez                                    **DECISION AND JUDGMENT**

      Appellant                              Decided:  December 23, 2025

* * * * *

Paul a. Dobson, Wood County Prosecutor and
Brian O. Boos, Deputy Chief Assistant Prosecutor, for appellee.

Samuel E. Gold, Esq., for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1}  This is an appeal of a December 10, 2024 judgment of the Wood County

Court of Common Pleas, denying appellant's Crim.R. 29(A) motion for acquittal after

appellee rested during the course of a two-day jury trial on one count of domestic

violence, in violation of R.C. 2919.25(A), as enhanced to a felony of the fourth degree based upon appellant's prior domestic violence conviction.

{¶ 2} At the conclusion of the trial, appellant was found guilty and sentenced to a one-year term of incarceration. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, David Cortez, sets forth the following three assignments of error:

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION FOR AN ACQUITTAL.

"THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"TRIAL COUNSEL'S REPRESENTATION OF APPELLANT WAS INEFFECTIVE."

Case Background

{¶ 4} The following undisputed facts are relevant to this appeal. This appeal arises from an incident that occurred on July 22, 2023, during a family bonfire at appellant's sister's home in Hoytville. In attendance at the bonfire were appellant, appellant's sister D, appellant's first cousin A.R., the victim in this case, R.W., D's brother, and several minor children of the attendees. Although the bonfire occurred at her home, D did not witness the incident underlying this appeal, as she went inside and had gone to bed prior to its occurrence.

2.

{¶ 5} During the bonfire, cross words were exchanged between appellant and A.R. regarding a relative of theirs who passed away from a fatal drug overdose. Tensions flared, the situation escalated, and appellant took R.W.'s guitar and raised it towards A.R. At this juncture, R.W. intervened, and grabbed his guitar back from appellant before it could be weaponized against A.R.

{¶ 6} Unfortunately, despite R.W.'s attempts to deescalate the situation, appellant nevertheless struck A.R. in the face with his fist. A.R. then retreated into D's home to retrieve her son and leave the premises. However, appellant pursued A.R. into the home, grabbed her, kicked her, and struck her again. A.R. was later taken to Wood County Hospital for emergency medical treatment. A.R. was treated for facial contusions, and diagnosed with a closed head injury.

{¶ 7} On December 7, 2023, based upon the above-described incident, appellant was indicted on one count of domestic violence, in violation of R.C. 2919.25(A), as enhanced to a felony of the fourth degree based upon a prior domestic violence conviction. On May 9, 2024, appellant was arraigned, and released on an OR bond.

{¶ 8} On December 9, 2024, a two-day jury trial commenced. Appellee presented four principal witnesses; including A.R., R.W., and the two responding sheriff's deputies.

{¶ 9} At the conclusion of appellee's presentation of their case, counsel for appellant made a Crim.R. 29(A) motion for acquittal. It was denied. Appellant then presented the testimony of his sister D, who had gone to bed and did not witness the incident. Appellant also testified on his own behalf. Following jury deliberations,

3.

appellant was found guilty and sentenced to a one-year term of incarceration. This appeal ensued.

## *First Assignment of Error*

### *A. consanguinity and prior residence with the offender*

{¶ 10} In his first assignment of error, appellant argues that the trial court erred in denying appellant's Crim.R. 29(A) motion for acquittal for two reasons. The first reason, Cortez argues, is that the State failed to prove the relationship of consanguinity or affinity between appellant and the victim, as required by statute.

{¶ 11} However, appellant admits that the victim, A.R., is in fact a first cousin of his by virtue of his mother and the victim's mother being sisters. Upon cross-examination, inquiry of appellant was made, "Do you agree that [A.R.] is your first cousin? . . . You guys are related by blood?" Appellant affirmatively replied, "Yes, sir." Consanguinity is defined as the relationship between persons of the same blood or origin. *Black's Law Dictionary* 299 (7th ed. 1999). Clearly, this element was established at trial.

{¶ 12} Cortez further argues that the state had not established the other element of the domestic violence charge. Specifically, that he and the victim A.R. had ever "resided" together. This assertion ignores the fact that Cortez himself testified that the victim and he resided together when he allowed the victim to stay at his apartment for approximately two weeks when she was eighteen years old. Upon cross-examination, inquiry of appellant was made, "Did [A.R.] live with you, [yes] or no?" Appellant affirmatively replied, "She stayed with me for about two weeks." A.R., and her brother R.W., both consistently testified to this fact as well.

4.

{¶ 13} Appellant's argument focuses on whether this prior temporary living arrangement is sufficient to meet the statutory element under the domestic violence statute.

{¶ 14} More notably, Cortez argues that since A.R. did not "move in" with the appellant, did not receive mail, and did not update her address, she could not have been "residing" with Cortez to the extent that he would be subject to prosecution under R.C. 2919.25(A).

That section states in relevant part:

> A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
>
> (F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
>
> (1) "Family or household member" means any of the following:
>
> (a) Any of the following who is residing or has resided with the offender:
>
> (i) A spouse, a person living as a spouse, or a former spouse of the offender;
>
> (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;
>
> (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

{¶ 15} The prosecution established that the victim's status would fall under R.C. 2919.25F(1)(a)(ii) as a person related by consanguinity who has resided with the offender.

{¶ 16} The word "Reside" also appears in hundreds of places in the Ohio Revised Code, and there are few, if any, statutory definitions. *Matter of Adoption of W.M.J.,* 2025-Ohio-3166, ¶ 23 (2nd Dist.). "Reside" has been defined as "the fixed place of habitation to which the person intends to return when absent." *State v. Barnes*, 2008-Ohio-2092, ¶ 22 (6th Dist.).

{¶ 17} Contrary to appellant's claims, under 2919.25F(1)(a)(ii), the State need not present evidence of a sophisticated or indefinite and permanent living arrangement that would involve the duties and obligations normally attendant with a spousal relationship. *See State v. Yaden*, 118 Ohio App. 3d 410, 415, 692 N.E.2d 1097, 1100 (1997).

{¶ 18} In terms of how recent a person must have resided with the offender, R.C. 2919.25(F)(2) provides the only "look back" provision of five years within the date of offense to a "person living as a spouse." R.C. 2919.25(A) provides no such temporal restriction that apply to a person being related by consanguinity. The legislature included the phrase "has resided" in 2919.25F(1)(a)(ii), creating protection for the persons so defined, even after the parties no longer share any living arrangement. *See State v. McGlothan*, 2014-Ohio-85, ¶ 17.

{¶ 19} The record establishes that the victim A.R. and Cortez are first cousins that resided together for a short time when the victim was eighteen years old. When the evidence is interpreted most favorably toward the prosecution, sufficient evidence was

6.

presented such that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, appellant's argument with respect to the consanguinity and residence evidence fails.

### B. Self-defense claim

{¶ 20} The appellant's second argument under this first assignment is that appellant's testimony "shows that any actions taken towards the victim were in self-defense."

{¶ 21} Here, Cortez was indicted by the Wood County Grand Jury on a single count of domestic violence, which stated, in pertinent part, that appellant, "[D]id knowingly cause or attempt to cause physical harm to [A.R.], a family or household member."

{¶ 22} As held by this court in *State v. Bulger*, 2023-Ohio-4004, ¶ 20 (6th Dist.),

> To support a claim of self-defense involving the use of nondeadly force [the type of alleged self-defense force at issue in this case], a defendant must show that (1) he was not at fault in creating the situation giving rise to the affray; (2) he has reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *Greer*, 6th Dist. Lucas No. L-22-1082, 2023-Ohio-103 at ¶ 33, quoting *State v. Paskins*, 200 N.E.3d 684, 2022-Ohio-4024, ¶ 48 (5th Dist.).

### Testimony before the Jury

{¶ 23} Appellee first presented the testimony of A.R., the victim. Upon direct inquiry establishing the familial nature of her relationship with appellant, A.R. testified, "[H]e's my [first] cousin . . . we all grew up together . . . he lived with us . . . My mom and his mom are sisters." No evidence was presented refuting their familial relationship.

7.

**{¶ 24}** Upon direct inquiry describing the incident underlying this case, A.R. testified,

> We were out by the fire. D said she was going inside . . . [A]s we were sitting by the fire [appellant] and R.W. were out there and I was, like, off on the other side. They had the guitar out there, playing the guitar . . . [Appellant] started talking about the day my uncle died . . . [Appellant] had the guitar, he raised the guitar like he was going to hit me, and R.W. had stepped in, and [R.W.] grabbed the guitar [away from appellant]. And then, after R.W. took the guitar [appellant] threw the chair at me . . . I just told him, like, I don't know why you're acting like this . . . I want nothing to do with it. And when I told him that, that's when he punched me in the face. And as I got to the door [of D's house] he was coming up behind me . . . [H]e comes up behind me and grabs me from behind and knocks me between the pantry . . . [H]e's coming up and kicking me in the face and punching me . . . That's when D came out and she said she was calling 911.

**{¶ 25}** R.W., D's brother and the eyewitness who grappled the guitar away from appellant after he raised it towards A.R., next testified. Upon direct inquiry describing the incident underlying this case, R.W. testified, "We were just out there having a fire, he brought my guitar down for him to tune it, and we were just jamming . . . We got in an argument . . . It escalated . . . I heard [appellant say to A.R.] bitch you want to hit me . . . [The guitar] was up [in an effort to hit A.R.] but I grabbed it from [appellant]." Upon further direct inquiry of whether he observed appellant strike A.R. during these events, R.W. affirmatively testified, "[O]nce."

**{¶ 26}** Deputy Mosley of the Wood County Sheriff's Department, one of the responding deputies to the incident, next testified. Upon confirming her professional employment, background, and being on duty at the time of the incident, Mosley then

8.

testified, "Deputy Stuff arrived first and was in the street talking to [appellant], and then I went inside the residence to talk to A.R. [and the other witnesses]."

{¶ 27} Upon direct inquiry of whether the incident statements of A.R. and the witnesses were consistent regarding what had occurred, Mosley affirmatively testified, "Yes." Conversely, upon direct inquiry of whether appellant's incident statement was inconsistent with the incident statements of A.R. and the witnesses regarding what had occurred, Mosley testified, "Yes [it was inconsistent]."

{¶ 28} Upon direct inquiry regarding appellant's culpability for what had occurred, Mosely was asked, "Did you, ultimately make a decision based on those statements about who the aggressor in the situation was?" Mosley affirmatively testified, "[Appellant]." Mosley also identified, reviewed, and described the photographs she had taken at the scene, and the following day, of A.R.'s physical injuries sustained in the incident.

{¶ 29} Deputy Stuff, the other responding deputy, next testified. Upon confirming his professional employment, background, and being on duty at the time of the incident, direct inquiry was made, "[D]id you ultimately make a decision about who the aggressor in the situation was?" Consistent with Mosely's conclusion, Stuff likewise affirmatively testified, "Yes . . . [appellant] was the aggressor."

{¶ 30} Upon appellee resting, appellant's Crim.R. 29(A) motion for acquittal being made and denied, appellant testified on his own behalf.

{¶ 31} Upon direct inquiry describing the incident underlying this case, appellant testified,

9.

We were at my sister's house . . . We had a death in the family prior . . . My sister [D] had just went to sleep, and, in hindsight . . . I could tell that [A.R.] planned this . . . She wanted to confront me . . . I'm like, you need to leave . . . [G]et the F out of here . . . R.W. saw that I was angry and he -- he grabbed the [guitar] . . . I stood up when he grabbed it [away from me].

{¶ 32} Despite claiming upon cross-examination that the consistent testimony of the victim and the witnesses stating that appellant raised a guitar towards A.R., and then struck A.R. with his fist after the guitar was taken from him, was untrue, when asked whether he had caused A.R.'s physical injuries that night, appellant conspicuously declined to deny it. Rather, appellant equivocally replied, "You know what, I don't know."

{¶ 33} D, appellant's sister, next testified. Upon direct inquiry describing her knowledge of the incident, she testified, "Not a whole lot. We had been drinking that night . . . I ended up going to bed early [prior to the incident outside] . . . I woke up to raised voices and a lot of commotion . . . and there was two people rolling around on the floor, and I couldn't see it first two they were, and I realized then that it was my brother, [appellant], and my cousin, [A.R.]."

{¶ 34} Upon the conclusion of the two-day jury trial, the jury found appellant guilty of the single count of domestic violence.

{¶ 35} In consideration of this appeal, we have carefully reviewed the record, with particular scrutiny to the transcripts of the trial proceedings and accompanying evidence. The record clearly, consistently reflects through the testimony of A.R., R.W., the two responding deputies, the corresponding photographic evidence of appellant's injuries, and the Wood County Hospital emergency room medical treatment records, that on July 22, 10.

2023, while attending a bonfire outside of his sister's residence, appellant became highly agitated at his first cousin, A.R., and despite efforts by R.W. to prevent an incident, appellant struck A.R. in her face, injuring her, requiring emergency medical treatment at Wood County Hospital.

{¶ 36} Notably, appellant does not deny being highly agitated at A.R., does not deny R.W. having to remove the raised object directed at A.R. from his hand, and does not deny causing A.R.'s injuries. Rather, appellant denies knowledge of whether he did, or did not, cause the injuries to A.R., and then, without collaboration, claims that the witnesses who observed him strike A.R., and the two deputies who concluded upon their investigation that appellant was the perpetrator, were all incorrect. The record refutes this position.

{¶ 37} As this court held in *State v. Cavin*, 2025-Ohio-1578, ¶ 14 (6th Dist.),

[A] motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *State v. Daniel*, 2023-Ohio-2800, ¶ 46 (6th Dist.), citing *State v. Messer*, 2017-Ohio-1223, ¶ 16 (6th Dist.), citing *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. The trial court's denial of a motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *Id.*, citing *Messer* at ¶ 16, quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, quoting *Messer* at ¶ 16, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997) . . . The question of whether the evidence is sufficient to support a conviction is a question of law. *Id.* citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

Crim.R. 29(A) provides,

11.

The court on a motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 38} In viewing the evidence in the light most favorable to the prosecution, we find that the record shows that a rational trier of fact could have found that on July 22, 2023, appellant knowingly struck A.R., his first cousin, in her face, causing her physical injuries.

{¶ 39} In conjunction, we further find that appellant's own uncollaborated, self-serving testimony regarding the incident, unilaterally attributing fault upon A.R., failed to show that he was not at fault in creating the situation giving rise to the affray, failed to show that he had reasonable grounds or an honest belief that he was in imminent danger of bodily harm, and failed to show that he did not use more force than was reasonably necessary to defend against the claimed imminent danger of bodily harm.

{¶ 40} Wherefore, we find that the record of evidence is sufficient to support appellant's conviction of domestic violence and shows that appellee disproved appellant's self-defense claim beyond a reasonable doubt. Appellant's first assignment of error is found not well-taken.

### Second Assignment of Error

*The Verdict is against the Manifest Weight of the Evidence.*

{¶ 41} In appellant's second assignment of error, appellant similarly maintains that his conviction was against the manifest weight of the evidence, again claiming, "[A]ny actions taken were in self-defense."

{¶ 42} As held by this court in *State v. McClain*, 2025-Ohio-577, ¶ 22 (6th Dist.),

> In evaluating a manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Gibson*, 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 43} As discussed above, in response to our first assignment of error, all investigatory statements taken by law enforcement, conclusions of law enforcement, and unrefuted witness testimony, consistently reflected that appellant committed an act of domestic violence against A.R., in violation of R.C. 2919.25(A).

{¶ 44} While appellant testified at length on his own behalf in an unsupported effort to attribute blame upon A.R., appellant was offered the opportunity to deny causing A.R.'s physical injuries. He declined to do so. In conjunction, as held above, appellant failed to establish the self-defense elements.

{¶ 45} Therefore, we find that appellant has not demonstrated that the trial court lost its way and created a manifest miscarriage of justice in finding that the consistent testimony of A.R., R.W., and the responding deputies, as corroborated by the photographs of appellant's injuries and the medical records, to be of greater credibility than appellant's inconsistent, uncollaborated testimony.

13.

**{¶ 46}** We find that the record shows that the state satisfied its burden of persuasion. The record shows that a greater amount of credible evidence was admitted at trial to sustain the verdict than not. Accordingly, we find appellant's second assignment of error not well-taken.

*Third Assignment of Error*

*Ineffective Assistance*

**{¶ 47}** In appellant's third assignment of error, appellant argues that he received ineffective assistance of trial counsel. In principal support, appellant asserts, "[T]rial counsel did not provide a copy of discovery to Appellant [in advance of trial] . . . Counsel did not abide by the expectation of communication and did not provide complete discovery . . . Additional preparation and review of discovery [by appellant] would have resulted in a more favorable outcome."

**{¶ 48}** As this court by held in *State v. Alexander*, 2023-Ohio-2708, ¶ 62-63 (6th Dist.),

> Pursuant to *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel first requires a showing that counsel's representation fell below an objective standard of reasonableness. *Bradley* at 142, 538 N.E.2d 373, quoting *Strickland* at 687-688, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that their conduct falls within the wide range of reasonable professional assistance, with a highly deferential scrutiny of counsel's representation. *Bradley* at 142, 538 N.E.2d 373, quoting *Strickland* at 689, 104 S.Ct. 2052. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance. *Bradley* at 142, 538 N.E.2d 373.
>
> Once an error by counsel is demonstrated, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional

14.

errors, the result of the proceeding would have been different. *Bradley* at 146, 538 N.E.2d 373, quoting *Strickland* at 694, 104 S.Ct. 2052. In other words, the deficient performance must have been so serious that, were it not for counsel's errors, the result of the trial would have been different. *State v. Wielinski*, 2018-Ohio-778, 108 N.E.3d 185, (6th Dist.), ¶ 69, quoting *Bradley* at 141-142, 538 N.E.2d 373.

{¶ 49} In applying the above-quoted governing legal principles to this case, the record reflects that appellant's premise underlying his claim of ineffective assistance of counsel is comprised of multiple layers of conjecture. Appellant first speculates that, had he received all discovery materials in advance of trial, then he would have been able to more effectively, "prepare for the sort of questions or strategies that might be employed by the State of Ohio." Appellant next speculates that, based upon his conjectured ability to have been able to more effectively anticipate the prosecution's trial strategy upon the receipt of all discovery materials prior to trial, then appellant's ability to prepare prior to trial and to successfully rebut the correctly anticipated questions and strategies, "[W]ould have resulted in a more favorable outcome.

{¶ 50} Appellant's ineffective assistance of counsel position is wholly unsupported by evidence. Appellant has failed to show which discovery materials, had they been received by him prior to trial, would have enabled him to successfully anticipate specific prosecution questions and strategies that were employed at trial in this case, and would have further enabled him to successfully refute said questions and strategies at trial in an outcome determinative manner. The entirety of the claim is rooted in speculation.

**{¶ 51}** As such, appellant has not demonstrated that, but for the claimed errors of trial counsel, the outcome in this case would have been different. Wherefore, we find appellant's third assignment of error not well-taken.

**{¶ 52}** On consideration whereof, the judgment of the Wood County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik

JUDGE

Gene A Zmuda

JUDGE

Charles E. Sulek
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.