[Cite as *State v. Harper*, 2017-Ohio-1395.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No. L-15-1310

      Appellee                                    Trial Court No. CR0201502174

v.

Todd Harper                                           **DECISION AND JUDGMENT**

      Appellant                                  Decided:  April 14, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Deborah Kovac Rump, for appellant.

* * * * *

**OSOWIK, J.**

**Introduction**

{¶ 1} Appellant, Todd Harper, appeals his conviction for aggravated burglary, in

violation of R.C. 2911.11(A)(1), a felony of the first degree, for which he was sentenced

to serve three years in prison.  Appellant's primary challenge is that the trial court erred

in allowing hearsay statements by the victim to be offered into evidence. The Lucas County Court of Common Pleas court allowed the evidence under Evid.R. 804(B)(6), which allows hearsay to be admitted against a defendant when the declarant is unavailable and the declarant's unavailability is caused by the defendant's wrongdoing. Appellant also challenges the sufficiency and weight of the evidence and a "consciousness of guilt" jury instruction.

{¶ 2} For the reasons that follow, we affirm appellant's conviction and deny his appeal.

## Facts and Procedural History

{¶ 3} The relevant facts to this appeal are as follows. Appellant and the victim, "MM," were involved in a romantic, albeit stormy, relationship for six years. Their relationship ended in December of 2014, and appellant moved out of the victim's apartment, located in the city of Toledo, Lucas County, Ohio. Testimony offered from both sides indicated that, despite their break-up, appellant continued to come over to the victim's, whether invited or not.

{¶ 4} In the early morning hours of June 25, 2015, at 3:22 a.m., appellant entered the victim's apartment through an unlocked window. According to appellant, he went there because he thought that the victim had begun dating someone else, and he was upset about it. Appellant was not invited to the apartment, and he did not attempt to enter through the door because he knew it would be locked. Surveillance video from the

2.

exterior of the apartment complex shows appellant's entry through the window. At the time, the victim was asleep on a couch; her eleven-year-old daughter was upstairs.

{¶ 5} What occurred after appellant broke into the victim's home is in dispute. The state called three witnesses who presented one version of the event. In order of their testimony, the witnesses were Toledo Police Officer Adam Fish, Detective William Moore, Jr., and the victim. The victim was subpoenaed to testify on the first day of trial, but she failed to appear. The victim did appear and testified on the second day, however.

{¶ 6} Officer Fish and his partner were the first police officers on the scene. Fish testified that the victim told him she was awakened by the appellant "on top of her" and that he "[struck] her repeatedly in the face." Because the allegations amounted to a felony, Officer Fish reported the incident to the detectives.

{¶ 7} Detective Moore investigated further. Moore testified that he talked to the victim the day after the incident. According to Moore, the victim told him,

> [Appellant] was upset at her about dating some other guy * * *. So she said she was asleep on the couch, and she was awakened by him on top of her kissing her.
>
> She said she woke up, and she pushed him off. She said when she pushed him off, he started to punch her in the face. She was laying on the couch. So she said she turned over put her face in the couch, and then he continued to hit her on her back.

3.

{¶ 8} Finally, the victim testified.  She said that, on June 25, 2015, "I woke up to [appellant] kissing me."  The following exchange took place:

Q. How was he positioned?

A. Sitting on the couch next to me.

Q. Okay.  How did you feel when you woke up to him kissing you?

A. Angry and scared.

Q. What did you do?

A. I pushed him, and I asked him what he was doing.

Q. What did he say?

A. He didn't say anything.  He just started hitting me.

Q. When you say hitting you, how was he hitting you?

A. He was punching me in my face.

Q. If you can recall, how many times do you think that [appellant] punched you in your face?

A. Probably about eight times.

Q. Okay.  What did you do when he was punching you in the face?

A. I turned my face towards the couch to cover myself.

Q. And was he punching you with an open or closed fist?

A. Closed.

Q. What did he do when you turned yourself into the couch?

A. He started punching me in my side and my back.

Q. How many times would you say [appellant] punched you in the side and the back?

A. I'm going to say about 10 times.

{¶ 9} The victim eventually broke free of appellant when her daughter came downstairs. The victim ran outside, and appellant followed her, which was also captured by surveillance video. The victim testified that she ran around the apartment complex in an attempt to find someone to call 911. When she saw appellant leave in his car, she returned to her apartment and called 911 herself. Audio footage of that call was admitted as an exhibit.

{¶ 10} A different version of events was offered by the defense. At trial, appellant testified that the victim was, indeed, asleep when he entered the apartment. He found her phone nearby and began looking at it. His purpose in going there was "to see [whether she] was talking to anybody or her Facebook page or was she texting anybody. But I couldn't figure out the PIN code to unlock her phone, and she woke up."

{¶ 11} Appellant testified that when the victim awoke, they argued over "relationship things, jealousy things." Appellant claims that the victim demanded her phone back, which he refused. He testified, "And that's when she went out the back. I let her go. That's why she was walking [on the video]. She wasn't running like I was chasing her or anything." Appellant denied that he struck or kissed her.

{¶ 12} Following deliberations, a jury found appellant guilty of aggravated burglary, as charged, and the trial court sentenced him to serve a term of three years in

5.

prison. Appellant appealed through appointed appellate counsel and asserts four assignments of error.

**Assignments of Error**

ASSIGNMENT OF ERROR I. The trial court erred by ruling that [appellant] had forfeited his right to object to hearsay pursuant to Evid.R. 804. It was particularly prejudicial because the witness was in fact available and did ultimately testify after the police officers offered the hearsay testimony. Despite this, no mistrial occurred and the trial court offered no cautionary instruction to the jury. It resulted in a violation of his right to Due Process of Law, a fair trial and the right to confront witnesses.

ASSIGNMENT OF ERROR II. The conviction for aggravated burglary is not supported by sufficient evidence and, as such, a judgment of acquittal should be entered. The trial court also erred by not granting [appellant's] Crim.R. 29 motion for acquittal.

ASSIGNMENT OF ERROR III. The conviction for aggravated burglary is against the manifest weight of the evidence.

ASSIGNMENT OF ERROR IV. The trial court abused its discretion and erred by giving the jury an instruction for consciousness of guilt.

## Law and Analysis

### Forfeiture by Wrongdoing Hearsay Exception

{¶ 13} Hearsay is generally not admissible unless it falls under an exception to the exclusionary rule. Here, the trial court allowed hearsay evidence to be offered against appellant pursuant to the "forfeiture by wrongdoing" exception set forth in Evid.R. 804(B)(6). The rule provides,

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * Forfeiture by wrongdoing. A statement offered against a party if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying. However, a statement is not admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement.

{¶ 14} The Supreme Court of Ohio recently decided a case involving Evid.R. 804(B)(6). *State v. McKelton*, Slip Opinion No. 2016-Ohio-5735. In *McKelton*, the court explained,

> Forfeiture by wrongdoing has long been recognized as an equitable exception to a defendant's constitutional right to confront the witnesses against him. *See Giles v. California*, 554 U.S. 353, 366, 128 S.Ct. 2678,

7.

171 L.Ed.2d 488 (2008); *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed.2d 244, 25 L. Ed. 244 (1878). Ohio codified this doctrine in 2001 as a hearsay exception under Evid.R. 804(B)(6). To admit statements under this exception, a prosecutor must show by a preponderance of the evidence that (1) the defendant engaged in wrongdoing that caused the witness to be unavailable and (2) one purpose for the wrongdoing was to make the witness unavailable to testify. *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 106, 926 N.E.2d 1239; *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 84, 840 N.E.2d 151. *Id*. at ¶ 96.

{¶ 15} Because a defendant's constitutional right under the Confrontation Clause is implicated, we review a decision to admit testimony under Evid.R. 804(B)(6) using a de novo standard of review. *Id*. at ¶ 97.

**The State's Motion to Include Hearsay under Evid.R. 804(B)(6)**

{¶ 16} Ten days before trial, the state filed its "Notice of Intent to Introduce Hearsay Statements" of the victim. The basis for the motion was that the victim had, despite being subpoenaed, failed to appear at a pretrial hearing on October 19, 2016, and had stopped returning phone calls.

{¶ 17} The state identified five sources from whom (or which) the victim's previous statements would be offered: two police officers, a prosecutor and two audio recordings.

8.

{¶ 18} As for the appellant's alleged "wrongdoing," the state offered the following in support of its motion:

Despite a "no contact order," appellant had initiated 197 phone calls from jail to appellant, two of which she had accepted. Appellant also wrote three letters to her, again in violation of the court's order.

Appellant asked others to contact the victim on his behalf, with the instruction that she not cooperate with the prosecution of this case. Audio from one such "jail house" call (Exhibit 8) revealed appellant asking another man ("C") to "make sure she don't come;" "Just stay on her bro;" "Call her, and text her;" "If she don't show up two times, they going to throw this shit out;" "give her the guidelines;" and "no face, no case."

{¶ 19} When the victim did not appear on day one of the trial, the prosecution renewed its motion. Appellant's trial counsel objected to the use of the evidence, arguing that it was speculative, at best, to conclude that appellant had anything to do with the victim's absence.

{¶ 20} The parties argued the matter outside of the jury's presence, and according to the transcript, the conference took 43 minutes. At the conclusion, the trial court ruled that the state had shown, by a preponderance of the evidence, that the victim's absence was due to appellant's wrongdoing, as evidenced by the phone call between appellant and "C" and the victim's failure to appear.

9.

**The Admission of Hearsay Statements Did Not Violate Evid.R. 804(B)(6)**

{¶ 21} Appellant raises several arguments. First, he states that there was no evidentiary hearing regarding the admissibility of the hearsay testimony. The trial transcript clearly demonstrates that there was advance written notice, in compliance with the rule, and a hearing on the matter. We reject appellant's argument.

{¶ 22} Next, appellant complains that no evidence was offered that the victim was "legally served with a subpoena" and/or a "timely subpoena." Appellant suggests that the victim's initial failure to appear was the state's fault and her absence served its interest, for the purpose of admitting hearsay. As a corollary, appellant argues that Evid.R. 804(B)(6) did not apply because appellant was not, in fact, unavailable, as evidenced by her appearance and testimony on day two of the trial.

{¶ 23} We find that both arguments lack merit.

{¶ 24} At the time of the hearing, just after opening statements, the state proffered the following evidence:

> That the victim was personally served by subpoena to appear at trial but, as indicated, had stopped cooperating. Then, on the Wednesday before trial, the victim met with the prosecutors and indicated that she did not want to testify, that appellant had written her letters, and told her he would take care of her when he got out of jail. The prosecutor told the victim that a "material witness warrant" would be issued to compel her attendance at trial, and she promised to attend.

10.

**{¶ 25}** Nonetheless, she did not appear. The prosecutors offered testimony that two officers went to her home on the first day of trial, but that she was not home. They then contacted her sister and employer, and her whereabouts were unknown.

**{¶ 26}** The evidence offered by the state to compel the victim's attendance went unchallenged by appellant at trial. The evidence included, but was not limited to Detective Moore's testimony, that he personally served the victim with a subpoena on October 17, 2016, to testify at trial. Even now, appellant offers only speculation that the subpoena was somehow deficient. In the absence of any evidence that the victim was not properly served with valid process, we reject appellant's claim.

**{¶ 27}** As for the victim's availability, a person is "unavailable," under Evid.R. 804(A)(5), if she "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

**{¶ 28}** We find that the state demonstrated that the victim was "unavailable" for purposes of the rule.

**{¶ 29}** Next, appellant challenges the trial court's determination that wrongdoing by him caused the victim's failure to appear initially. Appellant claims that no evidence was admitted "as to what pattern of conduct [appellant] engaged in that was designed to prevent [the victim] from testifying." Appellant continues, "[o]ther than her *after the fact* assertion that she was afraid, there was no credible evidence offered that [the victim] had any fear prior to the trial court granting the state's request."

11.

**{¶ 30}** Again, we disagree. The state demonstrated that the appellant contacted the victim, directly and indirectly, by phone and by mail. Direct evidence was played for the trial court of appellant pleading with "C" to convince the victim not to appear at trial. The prosecutor also conveyed the victim's reluctance to testify based on her receipt of letters from appellant. We find that the state demonstrated that the victim's unavailability was due to appellant's wrongdoing and was designed to prevent her from testifying.

**{¶ 31}** Appellant points out that most cases involving application of this hearsay exception involve the murder or serious assault of the declarant. However, the 2001 Staff Note to Evid.R. 804(B)(6) states that "the wrongdoing need not consist of a criminal act." For example, "[e]ncouraging a witness to leave the state is wrongdoing in this context because no person has the legal right to refuse to provide testimony in the absence of a privilege or other rule of evidence." *Id*. In other words, the exception covers a variety of wrongdoing beyond the murder or physical assault of the declarant.

**{¶ 32}** Indeed, we have affirmed the admission of a declarant's statements after the defendant threatened the declarant. *State v. Davis*, 6th Dist. Lucas No. L-14-1274, 2015-Ohio-5159, ¶ 18-20 (Finding testimony regarding unavailable declarant's statement was admissible where the defendant told declarant that "[e]verybody play their part, everybody going to be happy," which made the declarant fear for her life and her family's safety); *State v. Blackford*, 5th Dist. Stark No. 2014CA00050, 2014-Ohio-4808, ¶ 23 (holding that testimony regarding unavailable declarant's statements were admissible because jailhouse phone call recording showed the defendant's "numerous antics to get

12.

[the declarant] not to appear for trial but also to persuade [another witness] not to appear for trial"). This Ohio authority is consistent with the federal courts' application of the similar forfeiture-by-wrongdoing provision contained in Fed.R.Evid. 804(b)(6). *See United States v. Scott*, 284 F.3d 758, 764 (7th Cir.2002) ("We think that applying pressure on a potential witness not to testify, including by threats of harm or suggestions of future retribution, is wrongdoing.").

### The Admission of Hearsay Statements by the Victim Did Not Violate the Confrontation Clause

**{¶ 33}** Finally, we address appellant's argument that the admission of hearsay evidence against him violated his right to confront his accuser. The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. The protection "requires, wherever possible, testimony and cross-examination to occur at trial." *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 21. The right to confront one's accuser, however, "is not absolute and 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant.'" *State v. Madrigal*, 87 Ohio St.3d 378, 385, 721 N.E.2d 52 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Indeed, the courts have "explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's own misconduct is responsible for a witness's unavailability." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶115, citing *Crawford v. Washington*, 541 U.S. 36, 43, 124

13.

S.Ct. 1354, 158 L.Ed.2d 177 (2004). ("The rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be alternative means of determining reliability.")

{¶ 34} In this case, we see no Confrontation Clause issue because appellant did, in fact, confront the victim, his accuser. Appellant cross-examined her and the two officers, and the jury had the opportunity to evaluate the victim's story.

{¶ 35} In sum, the trial court concluded that the victim's out-of-court statements were admissible based upon its finding that appellant harassed the victim for the purpose of making her unavailable to testify at trial. We conclude that appellant forfeited his confrontation right by engaging in this wrongdoing, and the trial court did not err by admitting the victim's out-of-court statements into evidence.

{¶ 36} For all of these reasons, we find his first assignment of error not well-taken.

### Sufficiency and Manifest Weight of the Evidence

{¶ 37} In his second and third assignments of error, appellant argues that his conviction was not supported by legally sufficient evidence and was against the manifest weight of the evidence.

{¶ 38} Sufficiency and manifest weight are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is a determination of adequacy, and a court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable

14.

to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 39} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Id.* at 387. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387. Moreover, "'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. Franklin No. 96APA04-511, 1997 Ohio App. LEXIS 416 (Feb. 6, 1997).

{¶ 40} In this case, the state must have proven, beyond a reasonable doubt, that appellant committed the offence of aggravated burglary. R.C. 2911.11(A)(1) provides, in part,

> No person, by force, stealth, or deception, shall trespass in an
> occupied structure * * * when another person other than an accomplice of

15.

the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: (1) [t]he offender inflicts, or attempts or threatens to inflict physical harm on another.

{¶ 41} At trial, the state presented evidence that appellant trespassed in the victim's home by stealth or deception by entering without permission through the kitchen window, that two other people were in the home at the time, and that appellant entered the home with the purpose of confronting the victim. The state also presented evidence that appellant assaulted the victim while inside her home. Assault is a criminal offense, and the victim testified that appellant inflicted physical harm upon her. *State v. Ortiz*, 6th Dist. Lucas No. L-14-1251, 2016-Ohio-974, ¶ 19-27.

{¶ 42} Moreover, while appellant disputes the state's evidence, discussed below, a jail house recording between appellant and the victim, supports the state's case. During the call, appellant and the victim are heard discussing what occurred on June 25, 2016. (Exhibit 5). Appellant states "they got the video of me going through the window." He tells her what the allegations against him are: that after he went inside, "I started beat'n you up" and "I started punch'n you all in the back." The victim can be heard responding, "That's what I told the police." Appellant then adds, "I regret that shit like a [inaudible]" and "But I probably needed this" and "I just hope I get my job back." Appellant did not dispute the victim's story, nor express anger with her for spreading falsehoods.

{¶ 43} In support of his assignments of error, appellant makes several arguments. First, while he concedes that he trespassed into the victim's home, he asserts that he had

no intention to commit any criminal offense and that he did not, in fact, inflict serious physical harm. The purpose to commit a criminal offense, however, may be formed during a trespass in an occupied structure. *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 16.

{¶ 44} Appellant argues that the state failed to offer evidence of physical harm to the victim. Appellant complains that the victim's "after-the-fact and self-serving claim[s] of some unspecified swelling" cannot support the conviction. Appellant also cites testimony by the responding officer who said that the victim suffered no visible signs of injury and that she refused medical care.

{¶ 45} Finally, appellant interprets the video and the 911 tape very differently than the state. Referring to the video, appellant cites his own "casual pace," and "lackadaisical and generally unconcerned" movements and the victim's "lack of hesitation" captured by the video. Appellant argues that the video and the victim's calm voice during the 911 call support his case, i.e. that the victim fabricated this whole event to get appellant into trouble and that she never anticipated that he would be charged with anything more than a misdemeanor.

{¶ 46} The credibility of witnesses and the weight to be given to the evidence are matters for the jury to resolve. *Eicholtz* at ¶ 19. Having reviewed the trial transcript, we conclude that the state presented legally sufficient evidence to support appellant's aggravated burglary conviction. We also find that the conviction was not against the

17.

manifest weight of the evidence. Appellant's second and third assignments of error are not well-taken.

### The Consciousness of Guilt Jury Instruction was not Erroneous

{¶ 47} In this final assignment of error, appellant argues that the trial court erred when it gave a "consciousness of guilt" instruction to the jury. In particular, the court instructed, "testimony has been admitted indicating that the defendant intimidated a witness to deter her from testifying at trial." Appellant asserts that the instruction "implies that [appellant] intimidated" the victim and that, in fact, no evidence of intimidation was presented at trial.

{¶ 48} Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C. 2945.11. The trial court should instruct the jury if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St. 3d 585, 591, 575 N.E.2d 828 (1991). An appellate court will review the trial court's decision to include a requested jury instruction based on an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶ 49} Consciousness of guilt can be shown by specific evidence of witness intimidation and acts "designed to impede or prevent a witness from testifying." *State v. Grimes*, 1st Dist. Hamilton App. No. C-030922, 2005-Ohio-203, ¶ 55, citing *State v.*

18.

*Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992); *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 68.

{¶ 50} We have already discussed the efforts that appellant went to prevent the victim from testifying, and we need not repeat them here. We emphasize, however, that when the victim testified, she said, twice, that she felt "scared." As pointed out by the state, she was brought to court in an orange jumpsuit, having been arrested the night before as a material witness.

{¶ 51} We see no abuse of discretion by the trial court's decision to include the jury instruction on consciousness of guilt. Accord *State v. Pringle*, 12th Dist. Butler Nos. CA2007-08-193, CA2007-09-238, 2008-Ohio-5421, ¶ 50-54.

{¶ 52} Accordingly, we find appellant's fourth assignment of error not well-taken.

{¶ 53} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                  JUDGE
Thomas J. Osowik, J.

James D. Jensen, P.J.                _____
CONCUR.                                           JUDGE

                                     _____
                                                  JUDGE